# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CHELSEA SCHREIBER,<br>Plaintiff,<br><br>v.<br><br>ICONMA, LLC et al.,<br>Defendants. | CV 20-7985 DSF (AGRx)<br><br>Order GRANTING in Part and DENYING in Part Charter's Motion for Summary Judgment (Dkt. 50) |

Defendants Time Warner Cable, LLC and Charter Communications, Inc. (collectively, Charter) move for summary judgment as to Plaintiff Chelsea Schreiber's claims under the Fair Employment and Housing Act (FEHA) for discrimination, hostile work environment harassment,[1] retaliation, failure to provide reasonable accommodations, and failure to engage in the interactive process, as well as Schreiber's claims for breach of express and implied contract. Dkt. 50-1 (Mot.) at 8-9. Schreiber opposes. Dkt. 51 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, Charter's Motion is GRANTED in part and DENIED in part.

---

[1] Schreiber has stipulated to waive her second cause of action for harassment. Opp'n at 1 n.1. Additionally, pursuant to a stipulation, the Court has dismissed with prejudice her sixth cause of action for breach of express oral contract, seventh cause of action for breach of implied contract, eighth cause of action for negligent hiring, and twelfth cause of action for intentional infliction of emotional distress. Dkt. 48.

## I. UNDISPUTED FACTS

### A.     Charter Interviews and Hires Schreiber

Charter is a "cable television, high speed internet, and telephone service provider."  DSUF ¶ 1.[2]  Spectrum Networks is a division of Charter that provides local programming, including news programming.  Id.  On October 5, 2018, Schreiber interviewed for the position of Associate Digital Producer.  Id. ¶ 2.  On November 19, 2018, Charter hired Schreiber on a contract basis[3] as an Associate Digital Producer (ADP) for Spectrum through a temporary staffing agency, Iconma LLC.  Id. ¶ 3.  The contract was set to expire on February 18, 2019.  Id.

Anita Bennett was Schreiber's direct supervisor at Charter from November 19, 2018 through January 4, 2019.  Id. ¶ 6.  Charter Director of Digital Engagement, Misha Zilman, was Bennett's direct supervisor, and Charter Vice President of Digital, Katie Lombardi, oversaw the Spectrum News team from her office in New York City.  Id.  Alex Baker was the only other Associate Digital Producer in the Spectrum newsroom in Los Angeles.  Id. ¶ 8.

---

[2] Citations to DSUF refer to Schreiber's Statement of Genuine Disputes in Opposition to Charter's Motion for Summary Judgment, dkt. 53, which incorporates Charter's proposed uncontroverted facts and Schreiber's responses to those facts.  Citations to PSUF refer to Schreiber's Additional Material Facts that Negate Summary Judgment or Partial Summary Judgment, id.  To the extent certain facts are not mentioned in this Order, the Court has not relied on those facts in reaching its decision.  To the extent the Court cites to a disputed fact, the Court has found the dispute was not valid or was irrelevant, unless otherwise indicated.  The Court has independently considered the admissibility of the evidence and has not considered facts that are irrelevant or based on inadmissible evidence.

[3] Schreiber disputes that she was hired on a contract basis and claims she did not know whether or not she was an "at-will" employee or directly employed by Charter.  Id. ¶¶ 4-5.  For the purposes of this Order, that dispute is irrelevant.

## B.      Schreiber Begins Working at Charter

Schreiber's first day at Charter was November 19, 2018.  Id. ¶ 9.

On December 6, 2018, Bennett notified Charter of her resignation, effective January 4, 2019, and cited "the length of her commute and Charter's refusal to allow her to work remotely" as a reason for her resignation.  Id. ¶ 12.  Lombardi allowed Bennett to work from Charter's Valley Bureau up to two days per week for the last four weeks of Bennett's employment with Charter.  Id. ¶ 13.

## C.      Schreiber Announces Her Pregnancy

Schreiber announced her pregnancy to Bennett on December 11, 2018 and informed Bennett of her March 2019 due date.  Id. ¶ 15. Bennett notified Lombardi of Schreiber's pregnancy the following day. Id.

On December 19, 2018, Schreiber emailed Tiffany Adams, a representative from Iconma, the staffing agency through which Schreiber was hired, regarding her employment with Charter.  Id. ¶ 16. Adams informed Schreiber that Schreiber would not be eligible for unemployment benefits if she resigned from her position with Charter. Id.  On December 21, 2018, Schreiber emailed Lombardi requesting Spectrum to consider ending her contract before the contracted period ended on February 18, 2019.  Id. ¶ 18.

On January 2, 2019, Schreiber emailed Adams to ask again "whether she could receive unemployment benefits if she ended her assignment early."  Id. ¶ 20.  Two days later, Bennett resigned from Charter.  Id. ¶ 21.  On January 7, 2019, Schreiber emailed Lombardi "to inquire about Charter's maternity leave policy and stated that she intended to take 12 weeks of baby bonding leave after the delivery starting in mid-March 2019."  Id. ¶ 22.  On January 9, 2019, Schreiber's doctor placed her on bed rest for the duration of her pregnancy. Id. ¶ 23.  The note from Schreiber's doctor states Schreiber should "be place[d] out of work due to pregnancy complications" beginning January 14, 2019.  Dkt. 50-3 at 59 (Ex. 22).  In an email to Adams,

3

Lombardi, and Zilman on January 9, 2019, Schreiber stated her doctor wanted her "to take it easy for the rest of the pregnancy" and "want[ed] to put me on bed rest starting Monday, but she's okay with me working from home instead, if that's an option." Id. at 45 (Ex. 9).

### D.   Schreiber's Contract is Terminated

On January 9, 2019, Schreiber asked Charter to allow her to work from home. DSUF ¶ 24. Lombardi did not extend Schreiber's contract. Id. ¶ 26. On January 11, 2019, Lombardi informed Schreiber that Charter would not accommodate her request to work from home, but that Charter would allow her to take a leave of absence through the end of her contract on February 18, 2019. Id. ¶ 28. On the same day, Schreiber met with a Charter human resources representative, Angela Polk, to discuss Schreiber's employment with Charter. Id. ¶ 31. Lombardi emailed Schreiber on January 11, 2019 to inform her that Charter "would end her assignment early." Id. ¶ 32; Dkt. 51-1 at 14 (Ex. 1). Charter replaced Schreiber with another woman. Id. ¶ 38.

Because Schreiber was not an employee of Charter and had worked under her contract with Charter for less than two months, Schreiber was ineligible for a leave of absence under the Family Medical Leave Act or the California Family Rights Act. Id. ¶ 37. Schreiber received disability benefits from January through August 2019. Id. ¶ 56.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth

specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial.  Id. at 323-24; Fed. R. Civ. P. 56(c)(1).  A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment.  See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  Id. at 250-51

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues."  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'"  Fresno Motors v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014).  Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (simplified).

## III. DISCUSSION

### A.   Evidentiary Objections

"A district court's ruling on a motion for summary judgment may only be based on admissible evidence."  Oracle, 627 F.3d at 385.  A party seeking to admit evidence bears the burden of proof to show its admissibility.  Id.  "At the summary judgment stage, [the Court does] not focus on the admissibility of the evidence's form.  [The Court] instead focus[es] on the admissibility of its contents."  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

5

Schreiber submitted nineteen pages of evidentiary objections and Charter submitted twenty-eight pages.  Dkts. 52, 54-2.  The Court will not scrutinize each objection and give a full analysis of identical objections raised as to each fact.  Doe v. Starbucks, Inc., No. SACV 08-0582 AG (CWx), 2009 WL 5183773, at *1  (C.D. Cal. Dec. 18, 2009) (addressing "only objections to evidence that is central to the issues discussed in this Order"); see also Capitol Recs., LLC v. BlueBeat, Inc., 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010) ("In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." (quoting Doe, 2009 WL 5183773, at *1)).

Nevertheless, the Court briefly considers each of the parties' objections.  Schreiber objects to many statements in the Lombardi and Polk declarations, as well as to her own declaration and deposition testimony.  See generally dkt. 52.  Similarly, Schreiber and Charter object to each other's asserted facts as misstating the underlying testimony.  See, e.g., dkts. 52 at 8, 54-2 at 2.  The Court has examined the underlying testimony and has not relied on a party's characterization of the testimony, or any legal conclusions asserted by any party.

Both parties also object to certain pieces of evidence as irrelevant.  See, e.g., dkts. 52 at 2, 54-2 at 2.  Generally, an objection to evidence on the ground that it is "irrelevant . . . [is] duplicative of the summary judgment standard itself" and thus "redundant" and unnecessary to consider here.  Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson, 477 U.S. at 248 ("Factual disputes that are irrelevant or unnecessary will not be counted.").

The Court has considered only admissible evidence.

## B.    Discrimination Based on Sex, Gender, Pregnancy, or Disability (Claim 1)

A prima facie case of discrimination can be established either (1) with direct evidence of discrimination or (2) on a presumption

arising under the <u>McDonnell Douglas</u> burden-shifting framework.  <u>See</u> <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994).  Schreiber argues she establishes discrimination under both.  Opp'n at 10-11.

Under FEHA, the definition of "sex" includes "a person's gender" as well as "[p]regnancy or medical conditions relating to pregnancy."  Cal. Gov't Code § 12926(r)(1)-(2).

### 1.     Direct Evidence

"Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption."  <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (9th Cir. 1998) (simplified) (quoting <u>Davis v. Chevron, U.S.A., Inc.</u>, 14 F.3d 1082, 1085 (5th Cir. 1994)).

Schreiber argues Bennett, her direct supervisor, "admitted to discriminatory animus on the basis of Schreiber's pregnancy" because she admitted in her deposition she was "disappointed" Schreiber had not disclosed her pregnancy during the hiring process and "did not know" if she would have hired Schreiber had she known.  Opp'n at 10-11.  While these comments refer to Schreiber's pregnancy, they require inference or presumption to demonstrate these same sentiments were the reason Charter terminated Schreiber's contract early.  There is therefore no direct evidence of discrimination based on Schreiber's pregnancy.

### 2.     <u>McDonnell Douglas</u> Framework

FEHA prohibits discrimination by an employer because of certain characteristics, including disability, sex, gender, or medical condition.  Cal. Gov't. Code § 12940(a).  In analyzing discrimination claims under FEHA, California courts apply the three-stage burden-shifting approach established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-05 (1973).  Under the <u>McDonnell Douglas</u> test, the plaintiff first bears the burden of establishing a prima facie case that raises a presumption of discrimination.  <u>Guz v. Bechtel Nat'l, Inc.</u>, 24 Cal. 4th 317, 354-55 (2000).  The burden then shifts to the employer to rebut

this presumption by producing admissible evidence sufficient to show that "its action was taken for a legitimate, nondiscriminatory reason." Id. at 355-56.

If the employer sustains its burden, the presumption established in the first step disappears, and the plaintiff must raise a triable issue suggesting that the employer's proffered reason is mere pretext for unlawful discrimination or offer other evidence of discriminatory motive. Id. at 356. To satisfy this burden and survive summary judgment, Schreiber must raise a triable issue that "the employer's proffered reasons a[re] pretexts for discrimination, or [] offer any other evidence of discriminatory motive." Id.

When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1242 (9th Cir. 2013) (alteration in original) (quoting Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011)). "Thus, to prevail on summary judgment, the employer is required to show either that (1) plaintiff could not establish one of the elements of the FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." Id. (brackets omitted). "If the employer meets its burden, the discharged employee must demonstrate either 'that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." Id. (alteration in original).

### 3.    Prima Facie Case

To establish a prima facie case of discrimination under FEHA, Schreiber must establish (1) she is a member of a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action, such as termination; and (4) "some other circumstance suggests discriminatory motive." Guz, 24 Cal. 4th at 355. To establish the second prong for a prima facie case of pregnancy or disability discrimination, Schreiber must establish she

8

"could perform the essential functions of the job with or without accommodation." Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 962 (2008).

"While the plaintiff's prima facie burden is 'not onerous,' [s]he must at least show 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were' based on a [prohibited] discriminatory criterion . . ." Guz, 24 Cal. 4th at 355 (alterations in original) (citation omitted); see also Reynaga v. Rosenburg Forest Prods., 847 F.3d 678, 691 (9th Cir. 2017) ("We require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by the fact finder, upon a full record.") (simplified)).

Charter does not dispute Schreiber is a member of a protected class or that the termination of her contract constitutes an adverse employment action. The Court considers the second and fourth elements of Schreiber's prima facie case.

### a.      Competent Performance

Charter argues it is entitled to summary judgment on Schreiber's discrimination claim because Schreiber was unable to perform the essential duties of her job. Mot. at 18. Specifically, Charter contends "it is undisputed that regular attendance in the newsroom was an essential function of Schreiber's job, because she was tasked with collaborating with other producers in the newsroom to create news content as fast as the news developed." Id. at 19. Charter argues Schreiber was unable to meet this requirement because she "was placed on bed rest by her doctor" and was therefore not able to perform her job competently. Id. Schreiber disputes that regular in-person attendance was an essential function of her job and argues she was performing competently. Opp'n at 6, 13.

As an initial matter, Charter has not argued Schreiber was not performing competently *before* her contract was terminated.

As to whether Schreiber could perform the essential functions of her job with or without accommodations, the Court finds triable issues of fact exist.

First, there is a triable issue as to whether Schreiber could not come to work in the newsroom in person, which Charter contends was an essential requirement of her job.  See Mot. at 19.  Charter argues Schreiber was required by her doctor to stay home and not go to work in person.  Id.; DSUF ¶ 23.  Schreiber disputes this, arguing her doctor placed her on "bedrest or modified bedrest," and she "was not strictly confined to a bed" but was instructed "to stay off her feet as much as possible."  Id.  The note from Schreiber's doctor states Schreiber should "be place[d] out of work due to pregnancy complications" beginning January 14, 2019.  Dkt. 50-3 at 59 (Ex. 22).  In an email to Adams, Lombardi, and Zilman on January 9, 2019, Schreiber stated her doctor wanted her "to take it easy for the rest of the pregnancy" and "want[ed] to put me on bed rest starting Monday, but she's okay with me working from home instead, if that's an option."  Id. at 45 (Ex. 9).  However, in deposition, Schreiber explained the doctor's orders as, "I needed partial bed rest . . . I needed to keep off my feet as much as I could."  Id. at 137 (Ex. 40, Schreiber Dep. 84:19-24).  The Court finds a reasonable jury could conclude Schreiber could attend work in person with modifications.

Second, even if Schreiber was unable to come to work in person for the remainder of her contract, there is a triable issue of fact as to what the "essential functions" of the ADP job are, and whether they require regular in-person attendance.  Charter contends, "Associate Digital Producers worked in a fast-paced environment in the Spectrum newsroom and were constantly interfacing with one another and with multimedia journalists to produce news stories as fast as news developed.  Associate Digital Producers were required to be in the newsroom to attend daily in-person meetings with editors, watch the Spectrum news broadcasts, and collaborate with other employees to quickly report the news stories online."  DSUF ¶ 7.

However, the job description for the ADP position does not state that any of the job functions must be done in person, even though it lists eight "major responsibilities" associated with the position: (1) "Work hand-in-hand with reporters, producers and anchors to create and map out stories/moments for digital properties"; (2) "Create significant and original daily stories for distribution across Spectrum News platforms and products"; (3) "Participate actively in daily news editorial meetings"; (4) "Work collaboratively with other newsroom personnel on story development, breaking news, and marketing teasers to seamlessly syndicate content on television and digital platforms"; (5) "Monitor analytics to ensure and maximize interaction and engagement for current and potential stories"; (6) "Collaborate with reporters and Proofread/edit digital content submitted by other staff members"; (7) "Allocate time wisely and prioritize based on guidance from Senior producer and management"; and (8) "Partner and share content with digital staff in broader Spectrum News regions." Dkt. 50-3 at 84 (Ex. 39). While the in-person requirement may have been implied, the Court cannot determine as a matter of law that Schreiber's job required her to be physically in the Spectrum newsroom. Drawing inferences in favor of the non-moving party, the Court finds Schreiber has satisfied the second requirement for a prima facie case of discrimination.

Charter cites Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233 (9th Cir. 2012) for the proposition that employees who cannot come to work in person are not "qualified individuals" under FEHA. Mot. at 19. However, Samper is distinguishable. In Samper, the plaintiff, a neonatal intensive care unit nurse employed by a hospital, sought to opt out of the hospital's attendance policy, which allowed for five unplanned absences of unlimited duration as well as other permitted absences, such that she could take an unspecified number of unplanned absences from her job. Samper, 675 F.3d at 1235. After several years of negotiating with her employer about the requested accommodation and after taking numerous lengthy, unplanned absences in excess of the permitted number, the hospital ultimately agreed to "a highly flexible accommodation: Samper was

11

allowed to call in when having a bad day and move her shift to another day in the week." Id. at 1236.  Ultimately, the hospital discharged Samper when she was unable to comply with that accommodation. While the Ninth Circuit affirmed summary judgment in favor of the hospital, its reasoning doesn't apply here.  The Ninth Circuit emphasized, "As a NICU nurse, Samper's job unites the trinity of requirements that make regular on-site presence necessary for regular performance: teamwork, face-to-face interaction with patients and their families, and working with medical equipment." Id. at 1238.  Moreover, "Samper essentially ask[ed] for a reasonable accommodation that *exempts* her from an essential function." Id. at 1240.

Unlike the plaintiff in Samper, who sought not to report to work at all in a job that undoubtedly requires in-person attendance, Schreiber's requested accommodation was to report to work from her home.  As described above, there is a triable issue as to whether Schreiber's job functions required her to be physically present in the newsroom such that she could not competently perform her job from home.  The Court rejects Charter's argument that Samper mandates summary judgment in Charter's favor.

>b.     Discriminatory Motive

Charter also argues Schreiber cannot establish a prima facie case of discrimination because "Schreiber cannot establish that there was any causal connection between any protected characteristic or complaint and Charter's decision to end her contract early." Mot. at 19. The Court finds Schreiber has submitted evidence from which a jury could find Charter had a discriminatory motive in the early termination of Schreiber's contract.

Charter argues that because "the individuals who were involved in terminating Schreiber's temporary assignment with Charter, Lombardi and Polk, are women who are in the same protected class as Schreiber" raises an inference that there was no discrimination.  Mot. at 20.  The Court rejects Charter's argument because "discrimination can occur between members of the same protected class." Impey v.

Office Depot, Inc., No. C-09-01973 EDL, 2010 WL 2985071, at *16 (N.D. Cal. July 27, 2010); see also Villareal v. Chubb & Son, Inc., No. SACV 11-0674 DOC (RNBx), 2012 WL 3151254, at *8 (C.D. Cal. July 31, 2012) (rejecting "the proposition that being in the same protected class creates an adverse inference against discrimination").

The Court finds a reasonable jury could find Schreiber's pregnancy and related disabilities were the reason Charter terminated her contract early. It is undisputed that after Bennett announced her resignation, Lombardi allowed Bennett to work from Charter's Valley Bureau office up to two days a week for the last four weeks of her employment as a "concession to Bennett." DSUF ¶ 13. In an email to Bennett on December 11, 2018, Lombardi asked whether Bennett had "decided which days [Bennett] will be in the Valley" in reference to a scheduled meeting, and stated that if Bennett could not make it, "I completely understand." Dkt. 50-3 at 72 (Ex. 34). Bennett responded that she "was thinking Mondays and Tuesdays (days when the traffic is worst)" and Lombardi replied, "Oh, if it's too much trouble, we can always just meet with Chelsea and Alex." Id. Schreiber points to an email from Bennett to Lombardi on December 21, 2018 in which Bennett states she can "hop online" to assist the temporary replacement for Schreiber while Schreiber was on vacation; Schreiber contends Bennett's offer to "hop online" indicates she was working from home. Id. at 40 (Ex. 5). Construing these facts in the light most favorable to Schreiber, the Court finds a reasonable jury could conclude Charter was able to accommodate Bennett's work location preferences for the final four weeks of her employment, whether working from home or otherwise, and that this same willingness was not extended to Schreiber for the last few weeks before the end of her contract.

### 4.   Legitimate, Nondiscriminatory Reason

The burden then shifts to Charter to establish a legitimate, nondiscriminatory reason for terminating Schreiber's contract. "Legitimate" reasons proffered by an employer must be "reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination." Guz, 24 Cal.4th at 358. If the

13

reasons proffered by an employer are nondiscriminatory, they "need not necessarily have been wise or correct." Id. Charter argues it "was unable to accommodate Schreiber's request to work from home" and that it "wanted to ensure that Schreiber could receive unemployment benefits." Mot. at 20. If true, these would be legitimate reasons to terminate Schreiber's contract. Charter has met its burden.

### 5.   Pretext

Once a plaintiff has established a prima facie case and the employer has offered legitimate, nondiscriminatory reasons as to why it made its employment decisions, the "presumption of unlawful discrimination simply drops out of the picture." Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (internal quotation marks omitted). But when evidence of unlawful discrimination "consists of more than the [prima facie] presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason." Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1111 (9th Cir. 1991), superseded by statute on other grounds as recognized by Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027 (9th Cir. 2005).

In order to survive summary judgment, Schreiber "must raise a genuine factual issue as to whether the articulated reason was a mere pretext for discrimination." Phillips, 304 F. App'x at 530. If the plaintiff relies on circumstantial evidence to prove pretext, this evidence must be "specific and substantial." Brown v. City of Tucson, 336 F.3d 1181, 1188 (9th Cir. 2003). If there is any uncertainty as to the existence of a genuine issue of material fact at the summary judgment stage, it "must be resolved in favor of the plaintiff." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1124 (9th Cir. 2004).

Schreiber has raised a genuine issue as to whether the articulated reasons are legitimate. Schreiber argues: (1) "Defendants permitted remote support for the Digital Associate Producer position, which ranged from days to three months of support from an office

14

outside of the El Segundo newsroom"; (2) "Defendants did not replace Schreiber for three months after her termination and, during this period, Baker received remote support from another newsroom"; and (3) Schreiber also spoke with Bennett about Bennett's work from home arrangement, noting how Bennett was able to access and complete projects from her home."  Opp'n at 6.  In addition, Lombardi testified in deposition that she never asked IT whether it would be possible for Schreiber to work from home, nor was she aware that anyone else did.  Dkt. 51-1 at 128 (Ex. 13, Lombardi Dep. 108:6-13).  Further, Schreiber explained in deposition "there was no discussion" with Charter as to any other accommodations other than working from home, and stated she "could have suggested anything and discussed with them."  Dkt. 51-1 at 313 (Ex. 17, Schreiber Dep. 330:7-12).  Schreiber also stated Spectrum "shut the discussion down immediately, and told me it doesn't happen . . . .  This was no continued discussion about any modifications they could make to make it possible."  Id. at 314 (Ex. 17 at 331:5-14).

With respect to Charter's argument that it terminated Schreiber because it wanted her to be able to receive unemployment benefits, see Mot. at 20, the Court finds minimal evidence was submitted on this topic.  However, Schreiber argues Charter's reason is pretextual because at the time of her termination, Charter did not know whether Schreiber would be eligible for unemployment benefits.  PSUF ¶ 32.  Drawing all inferences in favor of Schreiber, the Court finds Schreiber has raised a genuine issue of fact as to whether Charter was motivated by a desire to ensure Schreiber could receive unemployment benefits.

The Court DENIES summary judgment as to the discrimination claim under FEHA.

## C.   Retaliation Claim Under FEHA (Claim 3) and California Labor Code § 1102.5 (Claim 10)

Charter moves for summary judgment on Schreiber's retaliation claims under FEHA and California Labor Code § 1102.5.  Mot. at 18-19, 23.

FEHA makes it unlawful for an employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h). Like claims for discrimination, claims for retaliation under FEHA are analyzed under the McDonnell Douglas burden-shifting framework. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). To establish a prima facie claim of retaliation, Schreiber must show that (1) she was engaged in a protected activity, (2) Charter subjected her to an adverse employment action, and (3) there is a causal link between the protected activity and Schreiber's action.[4] Yanowitz, 36 Cal. 4th at 1042.

### 1.    Protected Activity

Charter argues Schreiber cannot establish a prima facie case of retaliation because she has not made a protected complaint. Mot. at 23. A plaintiff engages in protected activity if she opposes unlawful employment practices when that opposition is based on a "reasonable belief" that the employer's actions are unlawful. Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994). Schreiber argues she engaged in protected activity because she "reasonably and in good faith believed that she was subjected to discrimination or harassment on the basis of her gender, pregnancy, and/or disability" and because she "requested a reasonable accommodation." Opp'n at 12. FEHA makes it unlawful for an employer to "retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted." Cal. Gov't Code § 12940(l)(1)(4); see also Rodriguez v. Comcast, Inc., 789 F. App'x 604, 606 (9th Cir. 2020) (explaining that for conduct occurring after the 2015 FEHA amendment, "requests for accommodation constitut[e] protected activity under FEHA."). Employees are not "required to elaborate to their employer on the legal theory underlying the complaints they are

---

[4] Charter does not dispute that Schreiber was subjected to an adverse employment action.

16

making, in order to be protected by the FEHA." Miller v. Dep't of Corr., 36 Cal. 4th 446, 474 (2005).  It is undisputed that Schreiber asked to work from home, DSUF ¶ 24; the Court finds Schreiber engaged in a protected activity under FEHA.

However, the Court finds Schreiber has not made a prima facie case of retaliation under California Labor Code § 1102.5, California's whistle-blower statute, because she has not demonstrated that she engaged in protected activity within the meaning of that statute.  A plaintiff engages in protected activity under Section 1102.5 "when the employee discloses reasonably based suspicions of illegal activity." Ross v. Cnty. of Riverside, 36 Cal. App. 5th 580, 592 (2019) (simplified). Schreiber does not claim she raised any suspicion of illegal activity, and there is no evidence to suggest Schreiber actually complained about illegal activity, as opposed to disagreements and confrontations with Charter employees.  See, e.g., Dkt. 51-1 at 144-45 (Ex. 13, Lombardi Dep. 165:9-166:10).

### 2.    Causal Link

Charter also argues it is entitled to summary judgment on Schreiber's retaliation claim because Schreiber "cannot establish a causal connection between any adverse employment action and a protected complaint, and Charter ended her contract for a legitimate business reason."  Mot. at 23.  A plaintiff may establish a causal link between the alleged protected activity and the alleged adverse action by circumstantial evidence, including the employer's knowledge of the protected activity and the proximity in time between the protected action and the adverse employment act.  See Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011); see also Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 507 (9th Cir. 2000) ("[W]hen adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred.").  Here, Schreiber asked to work from home on January 9, 2019, and she was terminated two days later. Dkt. 51-1 at 14, 18 (Exs. 1, 3).  Construing these facts in the light most

17

favorable to Schreiber, the Court finds Schreiber has met her burden to establish a prima facie case of retaliation under FEHA.

### 3.     Burden-Shifting Analysis

Applying the burden-shifting analysis to Schreiber's retaliation claim under FEHA, the Court finds Schreiber has raised triable issues of fact as to whether Charter's purported legitimate, nondiscriminatory reasons for terminating Schreiber's contract are pretextual for the reasons explained above.  As a result, the Court denies summary judgment as to the retaliation claim under FEHA.

The Court DENIES Charter's motion as to the retaliation claim under FEHA and GRANTS Charter's motion as to the retaliation claim under California Labor Code § 1102.5.

### D.     Failure to Provide Reasonable Accommodation (Claim 4)

Charter moves for summary judgment on Schreiber's claim of failure to provide reasonable accommodation in violation of FEHA. Mot. at 24.  "The elements of a reasonable accommodation cause of action are (1) the employee suffered a disability, (2) the employee could perform the essential functions of the job with reasonable accommodation, and (3) the employer failed to reasonably accommodate the employee's disability."  Nealy v. City of Santa Monica, 234 Cal. App. 4th 359, 373 (2015).  Charter does not dispute Schreiber suffered a disability, and for the reasons described above, the Court finds Schreiber has raised triable issues of fact as to whether she could perform the essential functions of her job at home with or without reasonable accommodation.

The Court finds Schreiber has raised a triable issue of fact as to whether Charter failed to reasonably accommodate her request to work from home.  As described above, Lombardi did not ask whether it would be logistically possible for Schreiber to work from home, dkt. 51-1 at 128 (Ex. 13, Lombardi Dep. 108:6-13), and Schreiber contends Charter did not engage in a discussion about any other accommodations other than working from home, and in fact "shut the discussion down

immediately" because working from home "doesn't happen."  Dkt. 51-1 at 313-14 (Ex. 17, Schreiber Dep. 330:7-12, 331:5-14).

The Court DENIES summary judgment on Schreiber's claim for failure to provide reasonable accommodation.

## E. Failure to Engage in the Interactive Process (Claim 5)

Under FEHA, an employer must "engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition."  "Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability."  Cal. Gov't Code § 12940(n).

"To prevail on a claim for failure to engage in the interactive process, the employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred." Wysinger v. Auto. Club of S. Cal., 157 Cal. App. 4th 413, 424 (2007) (citing Scotch v. Art Inst. of Cal., 173 Cal. App. 4th 986, 1018 (2009) and Nadaf-Rahrov, 166 Cal. App. 4th at 974).  "An employee cannot necessarily be expected to identify and request all possible accommodations during the interactive process itself because employees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have."  Scotch, 173 Cal. App. 4th at 1018 (simplified).

Here, Schreiber identified and requested an accommodation allowing her to work from home.  Additionally, Schreiber contends Charter refused to engage in a discussion about any other potential accommodations, relying on its policy against working from home.  See Dkt. 51-1 at 313-14 (Ex. 17, Schreiber Dep. 330:7-12, 331:5-14).  A reasonable jury could find Charter failed to engage in good faith with Schreiber.

19

The Court DENIES Charter's motion as to Schreiber's claim for failure to engage in the interactive process.

## F.    Failure to Prevent Discrimination and Wrongful Termination (Claims 9, 11)

Schreiber's claims for failure to prevent discrimination, harassment, or retaliation in violation of FEHA and wrongful termination in violation of public policy are derivative of her FEHA claims and survive summary judgment.  Glynn v. Superior Ct., 42 Cal. App. 5th 47, 56 (2019) (finding causes of action for failure to prevent and wrongful termination were derivative of FEHA disability discrimination and retaliation claims); Merrick v. Hilton Worldwide, Inc., 867 F.3d 1139, 1150 (9th Cir. 2017) (finding wrongful termination and failure to prevent claims were derivative of FEHA discrimination claim).

## G.    Punitive Damages

Charter argues Schreiber cannot recover punitive damages.  Mot. at 30.  Punitive damages are available for violations of FEHA "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a); Commodore Home Sys., Inc. v. Superior Court, 32 Cal. 3d 211, 215 (1982).  As is the case here, where the defendant is a corporate employer, the "authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."  Cal. Civ. Code § 3294(b).  In passing this section as written, "[t]he drafters' goals were to avoid imposing punitive damages on employers who were merely negligent or reckless and to distinguish ordinary respondeat superior liability from corporate liability for punitive damages."  White v. Ultramar, Inc., 21 Cal. 4th 563, 572 (1999).

"Corporate ratification in the punitive damages context requires actual knowledge of the conduct and its outrageous nature."  College Hosp. Inc. v. Superior Court, 8 Cal. 4th 704, 726 (1994) (en banc). Ratification may be established by any circumstantial or direct

evidence demonstrating adoption or approval of the employee's actions by the corporate agent and may be inferred from a failure by the employer to investigate an employee's acts once the employer has become aware of them. Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 622 (1989).

California courts have held that supervisors who have no discretionary authority over decisions that ultimately determine company policy are not considered managing agents even though they may be able to hire or fire other employees. White, 21 Cal. 4th at 577 ("[A supervisor's] supervision of plaintiff and her ability to fire him alone were insufficient to make her a managing agent.").

Here, regardless of whether Lombardi, Polk, and McNally are Charter's managing agents and whether there was corporate ratification – issues Charter did not address in its motion – by raising a genuine dispute as to pretext, Schreiber has also raised a genuine issue of material fact as to whether there was malice.

The Court DENIES Charter's motion for summary judgment as to Schreiber's prayer for punitive damages.

## IV. CONCLUSION

The Court GRANTS in part and DENIES in part Charter's motion for summary judgment.

IT IS SO ORDERED.

Date: November 15, 2021

_____
Dale S. Fischer
United States District Judge

21